FILED
CLERK, U.S. DISTRICT COURT

FEB 1 4 2002

CENTRAL DISTRICT OF CALIFORNIA
BY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2000 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| JOSEPH HAYES, aka<br>   "Joey,"<br>JOSEPH LOWERY, aka<br>   "Blue,"<br>MICHAEL BRIDGE, aka<br>   "Snake,"<br>BRIAN ROBERG, aka<br>   "Skully,"<br>JEFFREY LANGENHORST, aka<br>   "Hoss,"<br>TY FOWLES,<br>WILLIAM RICHIE, aka<br>   "Kreeper,"<br>ROBERT BALTIMORE, aka<br>   "Wigmo,"<br>JAMES PRESCOTT, aka<br>   "Irish,"<br>BRIAN JOHNSTON, aka<br>   "Cue-Ball,"<br>JAMES MOWATT, aka<br>   "Mo," and<br>JENNIFER D'ANNA, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

CR 02-___

I N D I C T M E N T

[18 U.S.C. § 1962(c):
Racketeer Influenced and
Corrupt Organizations; 18
U.S.C. § 1962(d): Racketeer
Influenced and Corrupt
Organizations Conspiracy; 18
U.S.C. § 1959: Violent Crime
in Aid of Racketeering
Activity; 18 U.S.C. § 2:
Aiding and Abetting; 18 U.S.C.
§ 1512: Witness Tampering; and
18 U.S.C. § 1513: Retaliation
Against Witnesses, Victims,
and Informants]

LHC:CFO:cfo

The Grand Jury charges:

### INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

### THE ENTERPRISE

1.   Beginning on a date unknown and continuing through on or about February 2002, both dates being approximate and inclusive, defendants JOSEPH HAYES, aka "Joey," JOSEPH LOWERY, aka "Blue," MICHAEL BRIDGE, aka "Snake," BRIAN ROBERG, aka "Skully," JEFFREY LANGENHORST, aka "Hoss," TY FOWLES, WILLIAM RICHIE, aka "Kreeper," ROBERT BALTIMORE, aka "Wigmo," JAMES PRESCOTT, aka "Irish," BRIAN JOHNSTON, aka "Cue-Ball," JAMES MOWATT, aka "Mo," and JENNIFER D'ANNA and others have been members and associates of a criminal organization engaged in violent crimes, including murders, attempted murders, assaults with deadly weapons, extortions, witness tampering, witness retaliation and drug trafficking crimes.  At all relevant times, this organization has operated within the Central District of California and elsewhere, and has been and is known as the "Nazi Low Riders," or the "NLR," and will be referred to in this indictment as the "NLR."  A primary goal of the NLR is to gain and maintain control of the Caucasian prison population through acts of violence, intimidation, and drug trafficking crimes.

2.   The NLR, including its leadership, membership, and associates, constitute an "enterprise," as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, which was engaged in, and the activities of which affected interstate and foreign commerce.

The NLR is an organized criminal group that operated throughout the State of California as well as the States of Oregon, Nevada, Arizona, Colorado, New Mexico, Michigan and elsewhere. The enterprise constituted an ongoing enterprise whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3.   Between on a date unknown to the Grand Jury and continuing through in or about February 2002, the NLR, through its leaders, members, and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1961(1), namely, acts involving murder, in violation of California Penal Code, Sections 187; attempted murder, in violation of California Penal Code, Sections 664 and 187; assault with a deadly weapon or causing serious bodily injury, in violation of California Penal Code, Section 245; robbery in violation of California Penal Code, Section 211, extortion, in violation of California Penal Code, Section 518; attempted extortion, in violation of California Penal Code, Sections 518 and 524; witness tampering, in violation of Title 18, United States Code, Section 1512; retaliation against witnesses, victims, and informants, in violation of Title 18, United States Code, Section 1513; and conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846.

GENERAL BACKGROUND

4.   The NLR is a powerful prison gang which controls many of the illegal activities committed by Caucasian inmates within the California and other penal systems.

3

5.   When NLR members or associates serve their prison sentences and rejoin their communities, they remain loyal to the NLR and continue to further the goals of the NLR outside the prison environment.

6.   The NLR controls its membership by limiting membership to only those who are invited to join.  New members must be sponsored by "Senior" NLR members.  Seniors are the leaders of the NLR.  The most senior member in any prison yard or building is usually the "shot caller" or the ranking leader.  A person can be admitted to the NLR either while he is in prison (on the "inside") or in the community (on the "outside").  NLR members oftentimes refer to each other as "Comrade," "Wood," "Dog," and "Homie."  Once a member of the NLR, one is considered a member for life.

7.   The NLR enforces its rules and demands respect among the general prison population by committing violent crimes, including murdering or assaulting or attempting to murder or assault those inmates who, by their actions, behavior, attitude, appearance, or ethnicity, violate the rules and ideology of, or pose a threat to, or offend the enterprise.  These violent crimes by enterprise members and associates against non-members are committed for the benefit of the enterprise, to become a member of the enterprise, or to maintain or increase one's status within the enterprise.

8.   The NLR further enforces its rules among its members by committing violent acts against those members who violate the rules of or pose a threat to the enterprise.  An NLR member must receive authorization or approval from a Senior to commit a

4

1  violent act against a fellow member.

2      9.   The NLR was given control of the Caucasian prison

3  population within California's prison yards (commonly referred to

4  as having "the keys to the yard") by the Aryan Brotherhood ("AB"

5  or "the Brand").  Based upon the AB's long-term criminal activity

6  within California prisons, the California Department of

7  Corrections ("CDC") had "locked down" validated AB members.  To

8  maintain control over the Caucasian prison population, the AB

9  needed to give authority and power to another group that had the

10 accessibility and mobility to continue committing crimes in

11 prison.  Accordingly, the NLR took over the control and the power

12 of the Caucasian inmates within California's prison system.  In

13 turn for having been given control of the yards by the AB, the

14 NLR would commit criminal acts for the AB as requested.  The NLR

15 needed to maintain this relationship in order to maintain and

16 increase their power and control over the prison yards and

17 Caucasian inmates.

18     10.  The NLR not only maintains control over the Caucasian

19 inmate population, but engages in prison politics with other

20 races of inmates when it is advantageous for the NLR.  At times,

21 the NLR forms alliances with other prison gang groups, such as

22 the Mexican Mafia ("EME"), to further its criminal ventures.

23                    PURPOSES OF THE ENTERPRISE

24     11.  The purposes of the enterprise include, but are not

25 limited to the following:

26          a.   Preserving, protecting, and expanding the power of

27 the enterprise through the use of intimidation, violence, and

28 threats of violence;

5

1          b.    Promoting and enhancing the reputation of the
2    enterprise as well as the reputations of its members and
3    associates; and

4          c.    Promoting white supremacist ideology inside and
5    outside the California penal system in order to maintain control
6    over the Caucasian prison population.

7              THE MEANS AND METHODS OF THE ENTERPRISE

8    12.   Among the means and methods by which the defendants
9    JOSEPH HAYES, aka "Joey," JOSEPH LOWERY, aka "Blue," MICHAEL
10   BRIDGE, aka "Snake," BRIAN ROBERG, aka "Skully," JEFFREY
11   LANGENHORST, aka "Hoss," TY FOWLES, WILLIAM RICHIE, aka
12   "Kreeper," ROBERT BALTIMORE, aka "Wigmo," JAMES PRESCOTT, aka
13   "Irish," BRIAN JOHNSTON, aka "Cue-Ball," JAMES MOWATT, aka "Mo,"
14   and JENNIFER D'ANNA, and their associates conducted and
15   participated in the conduct of the affairs of the enterprise are
16   the following:

17         a.    Members of the enterprise and their associates
18   would commit and attempt to commit acts of violence to spread and
19   to promote white supremacist philosophy and to maintain control
20   over the drug trafficking activities of Caucasian inmates;

21         b.    Members of the enterprise and their associates
22   would commit and attempt to commit acts of violence to protect,
23   expand, and promote the enterprise's criminal operations;

24         c.    Members of the enterprise and their associates
25   would promote a climate of fear through threats of violence;

26         d.    Members of the enterprise would promulgate certain
27   rules to be followed by all members of the enterprise including
28   the following:

6

1           1)    NLR members must follow all orders given by
2    Seniors;

3           2)    NLR members must attack all known sex
4    offenders, "rats," "snitches," "PCs" (inmates who are or have
5    been in protective custody) and "drop outs" (prison gang drop
6    outs).  This is referred to as "cleaning the trash off the yard";

7           3)    NLR members must "represent" the Caucasian race
8    well including standing up to all enemies regardless of the odds
9    of prevailing, never leaving a "fallen brother" behind, and
10   defending the Caucasian inmate population when necessary inside
11   prison;

12          4)    Caucasian inmates must not engage in "race
13   mixing" including dating members of different races, associating
14   with minority inmates or other racial groups such as minority
15   street or prison gangs unless approved by the Seniors or shot
16   callers, and practicing religions that the NLR associated with
17   other races such as the Muslim religion.  In addition, NLR
18   members must follow the orders of the Senior or shot caller
19   regarding the treatment of other races in prison to prevent a
20   racial riot that the NLR cannot control or is not aware of;

21          5)    NLR members must participate in the NLR
22   mandated exercise program and physical training program;

23          6)    NLR members must participate in "roll call"
24   where they identify themselves as NLR members;

25          7)    NLR members must go out to the prison yard
26   during yard time;

27          8)    NLR members cannot refuse to move into a cell
28   with another NLR member when asked, especially if asked by a

                              7

1  Senior member;

2         9)   NLR members cannot get into unpaid drug debts

3  with members of other races;

4         10)   NLR members cannot disrespect one another,

5  talk bad about one another, or "politic" against one another;

6         11) Caucasian inmates cannot claim to be a member of

7  the NLR or the AB if they have not obtained that membership

8  status through the "official" channels.  To become a member of

9  the NLR, a Senior must sponsor in the new member.  Usually, the

10  inmate must commit at least one violent act to become a member of

11  the NLR.  Once a member of the NLR, one cannot leave the NLR

12  without having a contract to kill placed on one's life;

13         12) NLR members cannot cooperate with or work for

14  any law enforcement officer or agency on any matter;

15         13) NLR members must give to "the kitty" by giving a

16  portion, often one third, of all items received through the mail

17  (including contraband) or purchased at the prison store to the

18  Senior or shot caller.  Once these items are gathered

19  (collectively referred to as "the kitty"), they are transported

20  to NLR members who are locked down in Administrative Segregation

21  or who do not have the ability to receive such items.  Caucasian

22  inmates who are not NLR members must also give a large percentage

23  (often one third or more) of the items they receive or obtain in

24  prison.  This process is commonly referred to as "taxing"; and

25         14)   Once released from prison, NLR members must

26  send money back into prisons to NLR members who remain in custody

27  in order to take care of their brothers;

28         e.   To enforce the rules of the enterprise and to

8

promote discipline, the members of the enterprise would commit
and attempt to commit violent acts against those members,
associates, or non-members who violate the enterprise's rules,
pose a threat to the enterprise, or represent opposing views to
the enterprise. To "call a hit," "to whack," or "to place a green
light" on someone refers to ordering a murder of another.   To
"check" someone or "place someone in check" refers to ordering
the assault of another;

      f.   The NLR is comprised of several levels of members
or associates.  Seniors are the leaders of the NLR.  The most
senior member in any prison yard or building is usually the "shot
caller" or the ranking leader.  All orders to attack an inmate
must be ordered by the shot caller or approved by the shot
caller.  If not, the member committing the attack will be subject
to attack himself for violating the rules and hierarchy of the
NLR.  Juniors are members who are the soldiers or enforcers of
the organization and generally follow the orders of the shot
caller.  In order to move up within the NLR leadership hierarchy,
a member must commit violent acts (referred to as "putting in
work").  The more "work" a member puts in, the greater the
leadership role the member assumes.  Eventually, the member will
get to call "hits" or order violent acts rather than be ordered
to commit the violent acts.  Senior members of the enterprise
sponsor new members into the enterprise.  Juniors, the newer
members, then follow the rules of the enterprise and promote the
philosophy of the enterprise.  The NLR is comprised of several
levels of members or associates: Seniors, Juniors, Prospects
(individuals who are trying to gain membership into the NLR by

1  committing criminal acts for the NLR), and Associates

2  (individuals who associate with members of the NLR but are not

3  members themselves); and

4         g.   To perpetuate the enterprise, the members would

5  conceal from law enforcement the ways in which the enterprise

6  conducts its affairs, the locations at which it discusses and

7  conducts it affairs, and the manner in which its affairs are

8  carried out.

9                    ROLES OF THE DEFENDANTS

10      13.   The defendants participated in the operation and

11 management of the enterprise.  The leaders of the enterprise

12 directed other members of the enterprise in carrying out unlawful

13 and other activities in furtherance of the conduct of the

14 enterprise's affairs.  The associates (or the soldiers) of the

15 enterprise participated in unlawful and other activities in

16 furtherance of the conduct of the enterprise's affairs.

17      14.   Defendant JOSEPH HAYES ("HAYES"), aka "Joey," is an

18 associate of the NLR and is an active member of the Aryan

19 Brotherhood ("AB"), another closely associated white supremacist

20 prison gang.  HAYES holds a position of authority within the NLR

21 and would direct, influence and participate in prison politics

22 and criminal activities conducted by the NLR enterprise.

23      15.   Defendant JOSEPH LOWERY ("LOWERY"), aka "Blue," is a

24 Senior in the NLR.  LOWERY has risen to one of the highest levels

25 of leadership within the NLR and is responsible for orchestrating

26 numerous violent acts committed throughout California's prison

27 system and local county jails from his residence within Pelican

28 Bay State Prison.  Prior to being housed at Pelican Bay State

                               10

Prison, LOWERY committed, ordered, and approved numerous violent acts, weapons violations, drug trafficking crimes, extortions, and witness intimidation crimes committed by NLR members throughout California.

16. Defendant MICHAEL BRIDGE ("BRIDGE"), aka "Snake," is a Senior in the NLR. BRIDGE has also risen to one of the highest levels of leadership within the NLR and is responsible for ordering and approving numerous violent acts, witness intimidation crimes, drug trafficking, and weapons violations both inside prison ("inside") and outside of prison ("outside") committed by NLR members throughout California.

17. Defendant BRIAN ROBERG ("ROBERG"), aka "Skully," is a Senior in the NLR. ROBERG has seniority over many other NLR members resulting in his control over several prison yards and county jails in which he was housed. As a "shot caller" over an area in custody where he was housed, ROBERG is responsible for ordering and approving numerous violent acts and drug trafficking crimes committed by NLR members throughout California.

18. Defendant JEFFREY LANGENHORST ("LANGENHORST"), aka "Hoss," is a Senior in the NLR. LANGENHORST has seniority over many other NLR members resulting in his control over state prison yards. As a "shot caller" over an area in custody where he was housed, LANGENHORST committed, ordered, and approved numerous violent acts, weapons violations, drug trafficking crimes, extortions, and witness intimidation crimes committed by NLR members throughout California.

19. Defendant TY FOWLES ("FOWLES") is a Senior in the NLR. FOWLES has seniority over many other NLR members resulting in his

11

control over several prison yards and county jails in which he was housed. As a "shot caller" over an area in custody where he was housed, FOWLES is responsible for committing, ordering and approving numerous violent acts against other inmates and correctional officers committed by NLR members throughout California, drug trafficking crimes, and weapons violations.

20. Defendant WILLIAM RICHIE ("RICHIE"), aka "Kreeper," is a soldier in the NLR. RICHIE has seniority over other NLR members which has resulted in control over a county jail and smaller prison yards in which he was housed. As a "soldier" over an area in custody, RICHIE is responsible for committing, and in some cases approving, numerous violent acts, extortion, and drug trafficking crimes throughout California.

21. Defendant ROBERT BALTIMORE ("BALTIMORE"), aka "Wigmo," is a soldier in the NLR. As a soldier, BALTIMORE is responsible for committing violent acts both inside and outside of prison, extortion, and drug trafficking crimes throughout California.

22. Defendant JAMES PRESCOTT ("PRESCOTT"), aka "Irish," is a soldier in the NLR. As a soldier, PRESCOTT is responsible for committing violent acts, assaults on peace officers, and drug trafficking crimes throughout California.

23. Defendant BRIAN JOHNSTON ("JOHNSTON"), aka "Cue-Ball," is a soldier in the NLR. As a soldier, JOHNSTON is responsible for committing violent acts, assaults on peace officers, weapons violations, and drug trafficking crimes throughout California.

24. Defendant JAMES MOWATT ("MOWATT"), aka "Mo," is a soldier in the NLR. He has had seniority over other NLR members resulting in control over a county jail and smaller prison yards

12

1  in which he was housed.   As a "shot caller" over an area in

2  custody where he was housed, MOWATT is responsible for

3  committing, ordering, and approving numerous violent acts

4  throughout California.

5      25.   Defendant JENNIFER D'ANNA ("D'ANNA") is an associate of

6  the NLR.   D'ANNA associates with NLR members to engage in NLR

7  criminal activity.   D'ANNA has accepted the white supremacist

8  ideology and rules of the NLR and participates and facilitates

9  NLR criminal activity to maintain and increase her status with

10  NLR members.

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

1                              COUNT ONE

2                        [18 U.S.C. § 1962(c)]

3                        (Racketeering)

4     26.  Paragraphs One through Twenty-Five of the Introductory

5 Allegations of this indictment are realleged and incorporated by

6 reference as though fully set forth herein.

7                 THE RACKETEERING OFFENSE

8     27.  Beginning on a date unknown to the Grand Jury, and

9 continuing through on or about February 2002, in the Central

10 District of California and elsewhere, defendants JOSEPH HAYES,

11 aka "Joey," JOSEPH LOWERY, aka "Blue," MICHAEL BRIDGE, aka

12 "Snake," BRIAN ROBERG, aka "Skully," JEFFREY LANGENHORST, aka

13 "Hoss," TY FOWLES, WILLIAM RICHIE, aka "Kreeper," ROBERT

14 BALTIMORE, aka "Wigmo," JAMES PRESCOTT, aka "Irish," and BRIAN

15 JOHNSTON, aka "Cue-Ball," and others associated with the NLR

16 enterprise described above, unlawfully, willfully, and knowingly

17 did conduct and participate, directly and indirectly, in the

18 conduct of the affairs of that enterprise, which enterprise was

19 engaged in, and the activities of which affected, interstate and

20 foreign commerce, through a pattern of racketeering activity,

21 that is, through the commission of the following acts:

22         THE PATTERN OF RACKETEERING ACTIVITY

23     28.  The pattern of racketeering activity, as defined in

24 Title 18, United States Code, Sections 1961(1) and 1961(5),

25 consisted of the following acts:

26

27

28

## Racketeering Act One

### (Conspiracy To Distribute Narcotics In Prison)

29.   Beginning on a date unknown to the Grand Jury and
continuing through at least until December 1998, in Imperial
County, within the Southern District of California, defendants
JEFFREY LANGENHORST, aka "Hoss," and MICHAEL BRIDGE, aka "Snake,"
and others known and unknown to the Grand Jury, knowingly and
willfully conspired and agreed with each other to commit an
offense against the United States, namely, distributing,
controlled substances, including methamphetamine and heroin,
within the Calapatria State Prison ("CAL"), in violation of Title
21, United States Code, Sections 841(a)(1) and 846.

## Racketeering Act Two

### (Attempted Murder)

30.   On or about September 27, 1998, in Imperial County,
within the Southern District of California, defendant JEFFREY
LANGENHORST, aka "Hoss," did willfully attempt to murder victim
Christopher Archuleta, in violation of California Penal Code,
Sections 664 and 187.

## Racketeering Act Three

### (Attempted Murder)

31.   On or about December 4, 1995, in Imperial County,
within the Southern District of California, defendant JEFFREY
LANGENHORST, aka "Hoss," did aid, abet, counsel, command, induce,
facilitate, and procure the attempted murder of victim Ronald
Wayne Wallace, aka "Critter," in violation of California Penal
Code, Sections 664 and 187.

15

1                          Racketeering Act Four

2        32.   The defendants named below committed the following

3   acts, any one of which alone constitutes Racketeering Act Four.

4                    (Conspiracy to Commit Murder)

5        a.   Beginning on a date unknown to the Grand Jury and

6   continuing through at least November 11, 1996, in Tuolumne

7   County, within the Eastern District of California and elsewhere,

8   defendants MICHAEL BRIDGE, aka "Snake," and ROBERT BALTIMORE, aka

9   "Wigmo," and others known and unknown to the Grand Jury,

10  conspired to murder Karl Hennings, Sr., aka "Butch," and a co-

11  conspirator committed an overt act, as described in the murder

12  listed below in Racketeering Act 4(b), in furtherance of the

13  conspiracy, in violation of California Penal Code, Sections 182

14  and 187.

15                              (Murder)

16       b.   On or about November 11, 1996, in San Bernardino

17  County, within the Central District of California, defendants

18  MICHAEL BRIDGE, aka "Snake," and ROBERT BALTIMORE, aka "Wigmo,"

19  did unlawfully and with malice aforethought with premeditation

20  and deliberation, murder and aid, abet, counsel, command, induce,

21  facilitate, and procure the murder of, victim Karl Hennings, Sr.,

22  aka "Butch," in violation of California Penal Code, Section 187.

23                      Racketeering Act Five

24                        (Attempted Murder)

25       33.  On or about April 14, 1996, in San Bernardino County,

26  within the Central District of California, defendant JOSEPH

27  LOWERY, aka "Blue," did aid, abet, counsel, command, induce,

28  facilitate, and procure the attempted murder of Shane McClanahan,

                                16

1  in violation of California Penal Code, Sections 664 and 187.

2  <u>Racketeering Act Six</u>

3  (Attempted Murder)

4  34.  On or about July 10, 1997, in San Bernardino County,

5  within the Central District of California, defendant JOSEPH

6  HAYES, aka "Joey," did willfully attempt to murder victim Ronald

7  Wayne Wallace, aka "Critter," in violation of California Penal

8  Code, Sections 664 and 187.

9  <u>Racketeering Act Seven</u>

10  35.  The defendants named below committed the following

11  acts, any one of which alone constitutes Racketeering Act Seven.

12  (Conspiracy to Commit Extortion)

13  a.  Beginning on or about August 1997, and continuing

14  through on or about February 1998, in San Bernardino County,

15  within the Central District of California, and elsewhere,

16  defendants JOSEPH HAYES, aka "Joey," JOSEPH LOWERY, aka "Blue,"

17  ROBERT BALTIMORE, aka "Wigmo," and WILLIAM RICHIE, aka "Kreeper,"

18  and others known and unknown to the Grand Jury, did knowingly

19  agree and conspire to commit extortion, as that term is defined

20  in California Penal Code, Section 518, in that defendants and

21  others known and unknown to the Grand Jury did unlawfully

22  conspire and agree to obtain money and property from victim David

23  Schmart, aka "Bam Bam," with his consent induced by a wrongful

24  use of force or fear, and a co-conspirator committed an overt

25  act, as described in the extortions listed below in Racketeering

26  Acts 7(b) through 7(f), in furtherance of the conspiracy, all in

27  violation of California Penal Code, Sections 182(a) and 518.

28

17

1          (Extortion)

2          b.    On or about August 27, 1997, in San Bernardino

3  County, within the Central District of California, and elsewhere,

4  defendant JOSEPH LOWERY, aka "Blue," did obtain the personal

5  property of victim David Schmart, aka "Bam Bam," namely $800,

6  with his consent induced by a wrongful use of force or fear, in

7  violation of California Penal Code, Section 518.

8          (Extortion)

9          c.    On or about August 30, 1997, in San Bernardino

10  County, within the Central District of California, and elsewhere,

11  defendant JOSEPH LOWERY, aka "Blue," did obtain the personal

12  property of victim David Schmart, aka "Bam Bam," namely $200,

13  with his consent induced by a wrongful use of force or fear, in

14  violation of California Penal Code, Section 518.

15          (Extortion)

16          d.    On or about November 3, 1997, in San Bernardino

17  County, within the Central District of California, and elsewhere,

18  defendant JOSEPH LOWERY, aka "Blue," did obtain the personal

19  property of victim David Schmart, aka "Bam Bam," namely $1,000,

20  with his consent induced by a wrongful use of force or fear, in

21  violation of California Penal Code, Section 518.

22          (Extortion)

23          e.    On or about January 23, 1998, in San Bernardino

24  County, within the Central District of California, and elsewhere,

25  defendant JOSEPH LOWERY, aka "Blue," did obtain the personal

26  property of victim David Schmart, aka "Bam Bam," namely $100,

27  with his consent induced by a wrongful use of force or fear, in

28  violation of California Penal Code, Section 518.

18

1       (Extortion)

2       f.    Between in or about August 1997, and in or about

3  February 1998, within the Central District of California, and

4  elsewhere, defendant ROBERT BALTIMORE, aka "Wigmo," did obtain

5  the personal property of victim David Schmart, aka "Bam Bam,"

6  namely vending machine cards to be used at the store facility

7  within the West Valley Detention Center, with his consent induced

8  by a wrongful use of force or fear, in violation of California

9  Penal Code, Sections 518.

10                      Racketeering Act Eight

11                      (Attempted Murder)

12     36.   On or about November 8, 1997, in San Bernardino County,

13 within the Central District of California, defendants  JOSEPH

14 LOWERY, aka "Blue," and WILLIAM RICHIE, aka "Kreeper," did

15 willfully attempt to murder and aid, abet, counsel, command,

16 induce facilitate, and procure the attempted murder of victim

17 David Schmart, aka "Bam Bam," in violation of California Penal

18 Code, Sections 664 and 187.

19                      Racketeering Act Nine

20                      (Attempted Murder)

21     37.   On or about February 27, 1998, in San Bernardino

22 County, within the Central District of California, defendants

23 JOSEPH LOWERY, aka "Blue," and ROBERT BALTIMORE, aka "Wigmo," did

24 willfully attempt to murder and did aid, abet, counsel, command,

25 induce, facilitate, and procure and otherwise willfully

26 participate in the attempted murder of victim Antonio Fontana, in

27 violation of California Penal Code, Sections 664 and 187.

28

                              19

1               Racketeering Act Ten

2                (Attempted Murder)

3       38.   On or about June 24, 1998, in San Bernardino County,

4   within the Central District of California, defendant JOSEPH

5   LOWERY, aka "Blue," did aid, abet, counsel, command, induce

6   facilitate, and procure the attempted murder of victim William

7   Zemaitis, in violation of California Penal Code, Sections 664 and

8   187.

9              Racketeering Act Eleven

10                (Attempted Murder)

11      39.   On or about July 20, 1998, in Kings County, within the

12  Eastern District of California, defendant BRIAN JOHNSTON, aka

13  "Cueball," did willfully attempt to murder victim Wesley Howard

14  Dehne, aka "Wesman," in violation of California Penal Code,

15  Sections 664 and 187.

16             Racketeering Act Twelve

17                (Attempted Murder)

18      40.   On or about August 13, 1998, in San Bernardino County,

19  within the Central District of California, defendants JOSEPH

20  LOWERY, aka "Blue," and JAMES PRESCOTT, aka "Irish," did  aid,

21  abet, counsel, command, induce, facilitate, and procure the

22  attempted murder of victim Michael Mesa, aka "Thumper," in

23  violation of California Penal Code, Sections 664 and 187.

24             Racketeering Act Thirteen

25                (Attempted Murder)

26      41.   On or about September 5, 1998, in San Bernardino

27  County, within the Central District of California, defendants

28  JOSEPH LOWERY, aka "Blue," MICHAEL BRIDGE, aka "Snake," and JAMES

                        20

PRESCOTT, aka "Irish," did aid, abet, counsel, command, induce, facilitate, and procure the attempted murder of victim Johnny Miles, in violation of California Penal Code, Sections 664 and 187.

### Racketeering Act Fourteen

#### (Attempted Murder)

42. On or about December 4, 1998, in Kings County, within the Eastern District of California, defendant BRIAN JOHNSTON, aka "Cueball," did willfully attempt to murder victim Bobby Smith, in violation of California Penal Code, Sections 664 and 187.

### Racketeering Act Fifteen

#### (Attempted Murder)

43. On or about January 27, 1999, in Kern County, within the Eastern District of California, defendant TY FOWLES did aid, abet, counsel, command, induce, facilitate, and procure the attempted murder of Antonio Ryan, in violation of California Penal Code, Sections 664 and 187.

### Racketeering Act Sixteen

#### (Attempted Murder)

44. On or about January 27, 1999, in Kern County, within the Eastern District of California, defendant TY FOWLES did aid, abet, counsel, command, induce, facilitate, and procure the attempted murder of Donald Singleton, in violation of California Penal Code, Sections 664 and 187.

### Racketeering Act Seventeen

#### (Attempted Murder)

45. On or about January 27, 1999, in Kern County, within the Eastern District of California, defendant TY FOWLES did

21

1  willfully attempt to murder Marun Tobius, in violation of

2  California Penal Code, Sections 664 and 187.

3                    Racketeering Act Eighteen

4                       (Attempted Murder)

5       46.   On or about September 29, 1999, in San Bernardino

6  County, within the Central District of California, defendant

7  WILLIAM RICHIE, aka "Kreeper," did willfully attempt to murder of

8  victim Cedric Parker, in violation of California Penal Code,

9  Sections 664 and 187.

10                   Racketeering Act Nineteen

11                      (Attempted Murder)

12      47.   January 14, 2000, in Kern County, within the Eastern

13  District of California, defendant TY FOWLES did aid, abet,

14  counsel, command, induce, facilitate, and procure the attempted

15  murder of victim Kelly Perkins, aka "Spanky," in violation of

16  California Penal Code, Sections 664 and 187.

17                    Racketeering Act Twenty

18                      (Attempted Murder)

19      48.   On or about January 20, 2000, in San Bernardino County,

20  within the Central District of California, defendant BRIAN

21  ROBERG, aka "Skully," did aid, abet, counsel, command, induce,

22  facilitate, and procure the attempted murder of victim Billy

23  Hagen, aka "Ocean Blue," in violation of California Penal Code,

24  Sections 664 and 187.

25                  Racketeering Act Twenty-One

26                          (Robbery)

27      49.   On or about March 9, 2000, in San Bernardino County,

28  within the Central District of California, defendant JEFFREY

                                22

LANGENHORST, aka "Hoss," did commit the robbery of victim Howard Martin, Jr., in violation of California Penal Code, Section 211.

### Racketeering Act Twenty-Two

50.    The defendants named below committed the following acts, any one of which alone constitutes Racketeering Act Twenty-Two:

### (Witness Tampering)

a.    On or about March 9, 2000, in San Bernardino County, within the Central District of California, defendants MICHAEL BRIDGE, aka "Snake," and JEFFREY LANGENHORST, aka "Hoss," did knowingly use intimidation and threaten and aid, abet, counsel, command, induce, facilitate, and procure the use of intimidation and threats against Summer Sinclair, with the intent to influence, delay, and prevent her testimony in an official proceeding, in violation of Title 18, United States Code, Sections 1512(b) and 2.

### (Witness Retaliation)

b.    On or about March 9, 2000, in San Bernardino County, within the Central District of California, defendants MICHAEL BRIDGE, aka "Snake," and JEFFREY LANGENHORST, aka "Hoss," did knowingly threaten to engage in conduct causing bodily injury and aid, abet, counsel, command, induce, facilitate, and procure such threats to engage in conduct causing bodily injury against Summer Sinclair, with the intent to retaliate against her for giving information to a law enforcement officer related to the possible commission of a federal offense, in violation of Title 18, United States Code, Sections 1513 and 2.

23

## Racketeering Act Twenty-Three

### (Attempted Murder)

51.  On or about April 6, 2000, in San Bernardino County, within the Central District of California, defendant BRIAN ROBERG, aka "Skully," did aid, abet, counsel, command, induce, facilitate, and procure the attempted murder of victim Kelly Moore, aka "Whitey," in violation of California Penal Code, Sections 664 and 187.

## Racketeering Act Twenty-Four

### (Attempted Murder)

52.  On or about July 24, 2000, in San Bernardino County, within the Central District of California, defendant BRIAN ROBERG, aka "Skully," did aid, abet, counsel, command, induce, facilitate, and procure the attempted murder of victim Nathan Johnson, aka "Chance," in violation of California Penal Code, Sections 664 and 187.

All in violation of Title 18, United States Code, Section 1962(c).

24

COUNT TWO

[18 U.S.C. § 1962(d)]

(Racketeering Conspiracy)

53. The allegations in paragraphs One through Twenty-Five and Twenty-Eight through Fifty-Two of this indictment are hereby realleged and incorporated as if fully set forth herein.

54. Beginning on a date unknown to the Grand Jury and continuing through in or about February 2002, within the Central District of California, and elsewhere, defendants JOSEPH HAYES, aka "Joey," JOSEPH LOWERY, aka "Blue," MICHAEL BRIDGE, aka "Snake," BRIAN ROBERG, aka "Skully," JEFFREY LANGENHORST, aka "Hoss," TY FOWLES, WILLIAM RICHIE, aka "Kreeper," ROBERT BALTIMORE, aka "Wigmo," JAMES PRESCOTT, aka "Irish," and BRIAN JOHNSTON, aka "Cue-Ball," together with others known and unknown to the Grand Jury, being persons associated with the Nazi Low Riders ("NLR"), did knowingly and intentionally conspire to conduct and participate, directly and indirectly, in the conduct of the affairs of the NLR through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5).

55. The pattern of racketeering activity through which defendants JOSEPH HAYES, aka "Joey," JOSEPH LOWERY, aka "Blue," MICHAEL BRIDGE, aka "Snake," BRIAN ROBERG, aka "Skully," JEFFREY LANGENHORST, aka "Hoss," TY FOWLES, WILLIAM RICHIE, aka "Kreeper," ROBERT BALTIMORE, aka "Wigmo," JAMES PRESCOTT, aka "Irish," and BRIAN JOHNSTON, aka "Cue-Ball," together with others, agreed to conduct the affairs of the enterprise consists of the racketeering acts set forth in paragraphs Twenty-Eight

25

1  through Fifty-Two above, as Racketeering Acts One through Twenty-
2  Four, of this indictment, which are realleged and reincorporated
3  as if fully set forth herein.  Each defendant agreed that a
4  conspirator would commit at least two acts of racketeering in the
5  conduct of the affairs of the enterprise.

6      All in violation of Title 18, United States Code, Section
7  1962(d).

26

COUNT THREE

[18 U.S.C. §§ 1959(a)(1) and 2]

(Violent Crime In Aid Of Racketeering Activity)

56.  At all times relevant to this indictment, the Nazi Low
Riders ("NLR"), as described more particularly in Paragraphs One
through Twenty-Five of this indictment, which paragraphs are
incorporated and realleged herein as if set forth in full, has
constituted an enterprise as that term is defined in Title 18,
United States Code, Section 1959(b)(2), that is, an association
in fact of individuals which is engaged in, and the activities of
which affect, interstate and foreign commerce.

57.  At all times relevant to this indictment, the Nazi Low
Riders ("NLR"), through its members and associates, has been
engaged in racketeering activity, as defined in Title 18, United
States Code, Sections 1959(b)(1) and 1961(1), namely, acts
involving murder, in violation of California Penal Code, Section
187; robbery in violation of California Penal Code, Section 211;
extortion, in violation of California Penal Code, Section 518;
conspiracy to distribute controlled substances, in violation of
Title 21, United States Code, Section 846; and obstruction of
justice, indictable under Sections 1512 and 1513 of Title 18,
United States Code.

58.  Beginning on a date unknown to the Grand Jury, and
continuing until November 11, 1996, in San Bernardino County,
within the Central District of California, defendants MICHAEL
BRIDGE, aka "Snake," and ROBERT BALTIMORE, aka "Wigmo," for the
purpose of maintaining and increasing their positions with the
NLR, an enterprise engaged in racketeering activity, did

27

1  unlawfully and with malice aforethought murder with premeditation

2  and deliberation and aid, abet, counsel, command, induce,

3  facilitate, and procure the murder of victim Karl Hennings, Sr.,

4  aka "Butch," in violation of California Penal Code, Section 187,

5  all in violation of Title 18, United States Code, Sections

6  1959(a)(1) and 2.

28

COUNT FOUR

[18 U.S.C. §§ 1959(a)(3) and 2]

(Violent Crime In Aid Of Racketeering Activity)

59.  At all times relevant to this indictment, the Nazi Low Riders ("NLR"), as described more particularly in Paragraphs One through Twenty-Five of this indictment, which paragraphs are incorporated and realleged herein as if set forth in full, has constituted an enterprise as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals which is engaged in, and the activities of which affect, interstate and foreign commerce.

60.  At all times relevant to this indictment, the Nazi Low Riders ("NLR"), through its members and associates, has been engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder, in violation of California Penal Code, Section 187; robbery in violation of California Penal Code, Section 211; extortion, in violation of California Penal Code, Section 518; conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846; and obstruction of justice, indictable under Sections 1512 and 1513 of Title 18, United States Code.

61.  On or about July 10, 1997, in San Bernardino County, within the Central District of California, defendants JOSEPH HAYES, aka "Joey," for the purpose of maintaining and increasing his position with the NLR, an enterprise engaged in racketeering activity, did willfully assault with a dangerous weapon victim Ronald Wayne Wallace, aka "Critter," in violation of California

29

1  Penal Code, Section 245, all in violation of Title 18, United

2  States Code, Section 1959(a)(3).

30

COUNT FIVE

[18 U.S.C. §§ 1959(a)(3) and 2]

(Violent Crime In Aid Of Racketeering Activity)

62.   At all times relevant to this indictment, the Nazi Low Riders ("NLR"), as described more particularly in Paragraphs One through Twenty-Five of this indictment, which paragraphs are incorporated and realleged herein as if set forth in full, has constituted an enterprise as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals which is engaged in, and the activities of which affect, interstate and foreign commerce.

63.   At all times relevant to this indictment, the Nazi Low Riders ("NLR"), through its members and associates, has been engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder, in violation of California Penal Code, Section 187; robbery in violation of California Penal Code, Section 211; extortion, in violation of California Penal Code, Section 518; conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846; and obstruction of justice, indictable under Sections 1512 and 1513 of Title 18, United States Code.

64.   On or about November 8, 1997, in San Bernardino County, within the Central District of California, defendants JOSEPH LOWERY, aka "Blue," and WILLIAM RICHIE, aka "Kreeper," for the purpose of maintaining and increasing their positions with the NLR, an enterprise engaged in racketeering activity, did commit and aid, abet, counsel, command, induce, facilitate, and procure

31

1  the assault with a dangerous weapon of victim David Schmart, aka

2  "Bam Bam," in violation of California Penal Code, Section 245,

3  all in violation of Title 18, United States Code, Sections

4  1959(a)(3) and 2.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT SIX

[18 U.S.C. §§ 1959(a)(3) and 2]

(Violent Crime In Aid Of Racketeering Activity)

65.  At all times relevant to this indictment, the Nazi Low Riders ("NLR"), as described more particularly in Paragraphs One through Twenty-Five of this indictment, which paragraphs are incorporated and realleged herein as if set forth in full, has constituted an enterprise as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals which is engaged in, and the activities of which affect, interstate and foreign commerce.

66.  At all times relevant to this indictment, the Nazi Low Riders ("NLR"), through its members and associates, has been engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder, in violation of California Penal Code, Section 187; robbery in violation of California Penal Code, Section 211; extortion, in violation of California Penal Code, Section 518; conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846; and obstruction of justice, indictable under Sections 1512 and 1513 of Title 18, United States Code.

67.  On or about February 27, 1998, in San Bernardino County, within the Central District of California, defendant JOSEPH LOWERY, aka "Blue," and ROBERT BALTIMORE, aka "Wigmo," for the purpose of maintaining and increasing their positions with the NLR, an enterprise engaged in racketeering activity, did commit and aid, abet, counsel, command, induce, facilitate, and

33

1  procure, the assault with a dangerous weapon of victim Antonio

2  Fontana, in violation of California Penal Code, Section 245, all

3  in violation of Title 18, United States Code, Sections 1959(a)(3)

4  and 2.

COUNT SEVEN

[18 U.S.C. §§ 1959(a)(3) and 2]

(Violent Crime In Aid Of Racketeering Activity)

68.   At all times relevant to this indictment, the Nazi Low
Riders ("NLR"), as described more particularly in Paragraphs One
through Twenty-Five of this indictment, which paragraphs are
incorporated and realleged herein as if set forth in full, has
constituted an enterprise as that term is defined in Title 18,
United States Code, Section 1959(b)(2), that is, an association
in fact of individuals which is engaged in, and the activities of
which affect, interstate and foreign commerce.

69.   At all times relevant to this indictment, the Nazi Low
Riders ("NLR"), through its members and associates, has been
engaged in racketeering activity, as defined in Title 18, United
States Code, Sections 1959(b)(1) and 1961(1), namely, acts
involving murder, in violation of California Penal Code, Section
187; robbery in violation of California Penal Code, Section 211;
extortion, in violation of California Penal Code, Section 518;
conspiracy to distribute controlled substances, in violation of
Title 21, United States Code, Section 846; and obstruction of
justice, indictable under Sections 1512 and 1513 of Title 18,
United States Code.

70.   On or about June 24, 1998, in San Bernardino County,
within the Central District of California, defendant JOSEPH
LOWERY, aka "Blue," for the purpose of maintaining and increasing
his position with the NLR, an enterprise engaged in racketeering
activity, did aid, abet, counsel, command, induce, facilitate,
and procure the assault with a dangerous weapon of victim William

35

1  Zemaitis, in violation of California Penal Code, Sections 245,

2  all in violation of Title 18, United States Code, Sections

3  1959(a)(3) and 2.

36

COUNT EIGHT

[18 U.S.C. §§ 1959(a)(3) and 2]

(Violent Crime In Aid Of Racketeering Activity)

71.  At all times relevant to this indictment, the Nazi Low Riders ("NLR"), as described more particularly in Paragraphs One through Twenty-Five of this indictment, which paragraphs are incorporated and realleged herein as if set forth in full, has constituted an enterprise as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals which is engaged in, and the activities of which affect, interstate and foreign commerce.

72.  At all times relevant to this indictment, the Nazi Low Riders ("NLR"), through its members and associates, has been engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder, in violation of California Penal Code, Section 187; robbery in violation of California Penal Code, Section 211; extortion, in violation of California Penal Code, Section 518; conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846; and obstruction of justice, indictable under Sections 1512 and 1513 of Title 18, United States Code.

73.  On or about August 13, 1998, in San Bernardino County, within the Central District of California, defendants JOSEPH LOWERY, aka "Blue," and JAMES PRESCOTT, aka "Irish," for the purpose of maintaining and increasing their positions with the NLR, an enterprise engaged in racketeering activity, did commit and aid, abet, counsel, command, induce, facilitate, and procure

37

1  the assault with a dangerous weapon of victim Michael Mesa, aka

2  "Thumper," in violation of California Penal Code, Section 245,

3  all in violation of Title 18, United States Code, Sections

4  1959(a)(3) and 2.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

38

COUNT NINE

[18 U.S.C. §§ 1959(a)(3) and 2]

(Violent Crime In Aid Of Racketeering Activity)

74.  At all times relevant to this indictment, the Nazi Low Riders ("NLR"), as described more particularly in Paragraphs One through Twenty-Five of this indictment, which paragraphs are incorporated and realleged herein as if set forth in full, has constituted an enterprise as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals which is engaged in, and the activities of which affect, interstate and foreign commerce.

75.  At all times relevant to this indictment, the Nazi Low Riders ("NLR"), through its members and associates, has been engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder, in violation of California Penal Code, Section 187; robbery in violation of California Penal Code, Section 211; extortion, in violation of California Penal Code, Section 518; conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846; and obstruction of justice, indictable under Sections 1512 and 1513 of Title 18, United States Code.

76.  On or about September 5, 1998, in San Bernardino County, within the Central District of California, defendants JOSEPH LOWERY, aka "Blue," MICHAEL BRIDGE, aka "Snake," and JAMES PRESCOTT, aka "Irish," for the purpose of maintaining and increasing their positions with the NLR, an enterprise engaged in racketeering activity, did commit and aid, abet, counsel,

39

1  command, induce, facilitate, and procure the assault with a

2  dangerous weapon of victim Johnny Miles, in violation of

3  California Penal Code, Section 245, all in violation of Title 18,

4  United States Code, Sections 1959(a)(3) and 2.

COUNT TEN

[18 U.S.C. §§ 1959(a)(3)]

(Violent Crime In Aid Of Racketeering Activity)

77.   At all times relevant to this indictment, the Nazi Low Riders ("NLR"), as described more particularly in Paragraphs One through Twenty-Five of this indictment, which paragraphs are incorporated and realleged herein as if set forth in full, has constituted an enterprise as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals which is engaged in, and the activities of which affect, interstate and foreign commerce.

78.   At all times relevant to this indictment, the Nazi Low Riders ("NLR"), through its members and associates, has been engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder, in violation of California Penal Code, Section 187; robbery in violation of California Penal Code, Section 211; extortion, in violation of California Penal Code, Section 518; conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846; and obstruction of justice, indictable under Sections 1512 and 1513 of Title 18, United States Code.

79.   On or about September 9, 1998, in Los Angeles County, within the Central District of California, defendant JAMES MOWATT, for the purpose of maintaining and increasing his position in the NLR, an enterprise engaged in racketeering activity, did assault with a dangerous weapon victim Marvin Dunn, in violation of California Penal Code, Section 245, all in

41

1 | violation of Title 18, United States Code Section 1959(a)(3).

1                          COUNT ELEVEN

2                    [18 U.S.C. §§ 1959(a)(3)]

3          (Violent Crime In Aid Of Racketeering Activity)

4          80.  At all times relevant to this indictment, the Nazi Low

5     Riders ("NLR"), as described more particularly in Paragraphs One

6     through Twenty-Five of this indictment, which paragraphs are

7     incorporated and realleged herein as if set forth in full, has

8     constituted an enterprise as that term is defined in Title 18,

9     United States Code, Section 1959(b)(2), that is, an association

10    in fact of individuals which is engaged in, and the activities of

11    which affect, interstate and foreign commerce.

12         81.  At all times relevant to this indictment, the Nazi Low

13    Riders ("NLR"), through its members and associates, has been

14    engaged in racketeering activity, as defined in Title 18, United

15    States Code, Sections 1959(b)(1) and 1961(1), namely, acts

16    involving murder, in violation of California Penal Code, Section

17    187; robbery in violation of California Penal Code, Section 211;

18    extortion, in violation of California Penal Code, Section 518;

19    conspiracy to distribute controlled substances, in violation of

20    Title 21, United States Code, Section 846; and obstruction of

21    justice, indictable under Sections 1512 and 1513 of Title 18,

22    United States Code.

23         82.  On or about September 29, 1999, in San Bernardino

24    County, within the Central District of California, defendant

25    WILLIAM MAX RICHIE, for the purpose of maintaining and increasing

26    his position in the NLR, an enterprise engaged in racketeering

27    activity, did assault with a dangerous weapon victim Cedric Allan

28    Parker, in violation of California Penal Code, Section 245, all

                                  43

in violation of Title 18, United States Code, Section 1959(a)(3).

COUNT TWELVE

[18 U.S.C. §§ 1959(a)(3) and 2]

(Violent Crime In Aid Of Racketeering Activity)

83.  At all times relevant to this indictment, the Nazi Low
Riders ("NLR"), as described more particularly in Paragraphs One
through Twenty-Five of this indictment, which paragraphs are
incorporated and realleged herein as if set forth in full, has
constituted an enterprise as that term is defined in Title 18,
United States Code, Section 1959(b)(2), that is, an association
in fact of individuals which is engaged in, and the activities of
which affect, interstate and foreign commerce.

84.  At all times relevant to this indictment, the Nazi Low
Riders ("NLR"), through its members and associates, has been
engaged in racketeering activity, as defined in Title 18, United
States Code, Sections 1959(b)(1) and 1961(1), namely, acts
involving murder, in violation of California Penal Code, Section
187; robbery in violation of California Penal Code, Section 211;
extortion, in violation of California Penal Code, Section 518;
conspiracy to distribute controlled substances, in violation of
Title 21, United States Code, Section 846; and obstruction of
justice, indictable under Sections 1512 and 1513 of Title 18,
United States Code.

85.  On or about January 20, 2000, in San Bernardino County,
within the Central District of California, defendant BRIAN
ROBERG, aka "Skully," for the purpose of maintaining and
increasing his position in the NLR, an enterprise engaged in
racketeering activity, did aid, abet, counsel, command, induce,
facilitate, and procure the assault with a dangerous weapon of

45

1  victim Billy Hagen, aka "Ocean Blue," in violation of California

2  Penal Code, Section 245, all in violation of Title 18, United

3  States Code, Sections 1959(a)(3) and 2.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT THIRTEEN

[18 U.S.C. §§ 1959(a)(3) and 2]

(Violent Crime In Aid Of Racketeering Activity)

86.   At all times relevant to this indictment, the Nazi Low Riders ("NLR"), as described more particularly in Paragraphs One through Twenty-Five of this indictment, which paragraphs are incorporated and realleged herein as if set forth in full, has constituted an enterprise as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals which is engaged in, and the activities of which affect, interstate and foreign commerce.

87.   At all times relevant to this indictment, the Nazi Low Riders ("NLR"), through its members and associates, has been engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder, in violation of California Penal Code, Section 187; robbery in violation of California Penal Code, Section 211; extortion, in violation of California Penal Code, Section 518; conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846; and obstruction of justice, indictable under Sections 1512 and 1513 of Title 18, United States Code.

88.   On or about March 9, 2000, in San Bernardino County, within the Central District of California, defendants JEFFREY LANGENHORST, aka "Hoss," and JENNIFER D'ANNA, for the purpose of maintaining and increasing their positions with the NLR, an enterprise engaged in racketeering activity, did commit and aid, abet, counsel, command, induce, facilitate, and procure the

47

1 assault with a dangerous weapon of victim Howard Martin, Jr., in

2 violation of California Penal Code, Section 245, all in violation

3 of Title 18, United States Code, Sections 1959(a)(3) and 2.

COUNT FOURTEEN

[18 U.S.C. §§ 1959(a)(3) and 2]

(Violent Crime In Aid Of Racketeering Activity)

89.  At all times relevant to this indictment, the Nazi Low
Riders ("NLR"), as described more particularly in Paragraphs One
through Twenty-Five of this indictment, which paragraphs are
incorporated and realleged herein as if set forth in full, has
constituted an enterprise as that term is defined in Title 18,
United States Code, Section 1959(b)(2), that is, an association
in fact of individuals which is engaged in, and the activities of
which affect, interstate and foreign commerce.

90.  At all times relevant to this indictment, the Nazi Low
Riders ("NLR"), through its members and associates, has been
engaged in racketeering activity, as defined in Title 18, United
States Code, Sections 1959(b)(1) and 1961(1), namely, acts
involving murder, in violation of California Penal Code, Section
187; robbery in violation of California Penal Code, Section 211;
extortion, in violation of California Penal Code, Section 518;
conspiracy to distribute controlled substances, in violation of
Title 21, United States Code, Section 846; and obstruction of
justice, indictable under Sections 1512 and 1513 of Title 18,
United States Code.

91.  On or about April 6, 2000, in San Bernardino County,
within the Central District of California, defendant BRIAN
ROBERG, aka "Skully," for the purpose of maintaining and
increasing his position in the NLR, an enterprise engaged in
racketeering activity, did aid, abet, counsel, command, induce,
facilitate, and procure the assault with a dangerous weapon of

49

1  victim Kelly Moore, aka "Whitey," in violation of California

2  Penal Code, Section 245, all in violation of Title 18, United

3  States Code, Sections 1959(a)(3) and 2.

COUNT FIFTEEN

[18 U.S.C. §§ 1959(a)(3) and 2]

(Violent Crime In Aid Of Racketeering Activity)

92.  At all times relevant to this indictment, the Nazi Low Riders ("NLR"), as described more particularly in Paragraphs One through Twenty-Five of this indictment, which paragraphs are incorporated and realleged herein as if set forth in full, has constituted an enterprise as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals which is engaged in, and the activities of which affect, interstate and foreign commerce.

93.  At all times relevant to this indictment, the Nazi Low Riders ("NLR"), through its members and associates, has been engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder, in violation of California Penal Code, Section 187; robbery in violation of California Penal Code, Section 211; extortion, in violation of California Penal Code, Section 518; conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846; and obstruction of justice, indictable under Sections 1512 and 1513 of Title 18, United States Code.

94.  On or about July 24, 2000, in San Bernardino County, within the Central District of California, defendant BRIAN ROBERG, aka "Skully," for the purpose of maintaining and increasing his position in the NLR, an enterprise engaged in racketeering activity, did aid, abet, counsel, command, induce, facilitate, and procure the assault with a dangerous weapon of

51

1    victim Nathan Johnson, aka "Chance," in violation of California

2    Penal Code, Section 245, all in violation of Title 18, United

3    States Code, Sections 1959(a)(3) and 2.

1                              COUNT SIXTEEN

2                       [18 U.S.C. §§ 1512(b) and 2]

3        95.  On or about March 9, 2000, in San Bernardino County,

4 within the Central District of California, defendants MICHAEL

5 BRIDGE, aka "Snake," and JEFFREY LANGENHORST, aka "Hoss," did

6 knowingly commit and aid, abet, counsel, command, induce,

7 facilitate, and procure the use of intimidation and threats

8 against Summer Sinclair, with the intent to influence, delay, or

9 prevent her testimony in an official proceeding, in violation of

10 Title 18, United States Code, Sections 1512(b) and 2.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT SEVENTEEN

[18 U.S.C. §§ 1513 and 2]

96.  On or about March 9, 2000, in San Bernardino County, within the Central District of California, defendants MICHAEL BRIDGE, aka "Snake," and JEFFREY LANGENHORST, aka "Hoss," did commit and aid, abet, counsel, command, induce, facilitate, and procure the threatening of Summer Sinclair with conduct causing bodily injury, with the intent to retaliate against her for providing information given to law enforcement officers regarding the possible commission of a federal offense, in violation of Title 18, United States Code, Sections 1513 and 2.

A TRUE BILL

_____
Foreperson

JOHN S. GORDON
United States Attorney

RONALD L. CHENG
Assistant United States Attorney
Acting Chief, Criminal Division


LAWRENCE H. CHO
Assistant United States Attorney
Chief, Organized Crime Strike Force

54